**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OLD GUARD INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-5258** |
| | : | |
| **SAFECO INSURANCE COMPANY OF AMERICA** | : | |

# MEMORANDUM

**KEARNEY, J.** **July 29, 2026**

An apartment complex owner purchased a liability insurance policy and named his property manager as an additional insured on the policy as required by their management agreement. The property manager also purchased its own liability insurance. Each policy included "other insurance" language addressing who first covers losses when there are separate insurers' coverage obligations for the same loss.

Not an issue until a lawsuit against both the complex owner and his property manager where they each seek coverage for attorneys' fees in defending themselves and a potential judgment. Apartment tenants are now suing the complex owner and management company in state court with trial set for October 2026. The complex owner's insurer is paying his costs of defense. The management company's insurer is paying its costs of defense. The management company's insurer sued, asking we declare the complex owner's insurer must also pay the management company's defense costs as an additional insured on the owner's liability policy even though the management company purchased its own insurance. Their thoughtful arguments require we study the "other insurance" language in both policies and evaluate persuasive guidance from the Pennsylvania Supreme Court cited by both insurers. We find the plain text of the complex owner's policy confirms the complex owner's insurer did not agree to pay the costs of defense for a person

who otherwise purchased insurance covering the same exposure. The management agreement between the complex owner and management company does not alter the policy language. The owner's insurer did not agree to pay the management company's costs of defense until after the management company exhausted its own insurance.

We grant the complex owner insurer's motion to dismiss finding it has no obligation to pay defense costs today until the management company exhausts its purchased coverage. The parties agree their issues on indemnity coverage arising from a potential judgment in state court are not ripe. We dismiss the management company insurer's case without prejudice.

## I. Background

Philadelphia apartment complex owner Andrew Lasky hired Elite Level Realty, LLC to, among other things, manage the apartment complex through a Residential Property Management Agreement.[1] Mr. Lasky agreed, as part of his obligations under the Management Agreement, to buy general liability insurance which identified Property Manager Elite as an additional insured.[2]

The parties did not address whether Mr. Lasky must purchase primary or non-contributory coverage.[3] Insurance policies are generally divided into two levels of coverage: primary and excess.[4] Primary coverage addresses an injury within the scope of the purchased insurance policy.[5] Excess coverage addresses demonstrated losses remaining after the insured exhausts their primary coverage under their policy.[6] Insurers include this "Other Insurance" language to define how it will allocate responsibility for multiple insurers when primary and excess coverage is an issue.[7]

### *Mr. Lasky and Elite purchase separate insurance coverage.*

Mr. Lasky purchased a liability policy covering his apartment complex from Safeco Insurance Company of America effective November 15, 2023.[8] Mr. Lasky identified Elite as an additional insured under his Safeco policy as required by the Management Agreement.[9] The Safeco

policy in its "Other Insurance" provision confirmed their agreement "[t]his insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."[10]

Property Manager Elite separately bought a liability policy from Old Guard Insurance Company effective May 8, 2023 through May 8, 2024.[11] Elite agreed its Old Guard policy "is primary except when" it is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured."[12]

***Alleged assault upon apartment tenants leads to litigation and coverage questions.***

Apartment tenants Marcella and Michael Yates allege another tenant physically assaulted them at the Complex on or about November 15, 2023.[13] They sued Mr. Lasky and Elite in state court the following year.[14] The Yates plaintiffs allege Mr. Lasky and Elite knew or should have known tenants and their guests faced a risk of assault at the apartment complex.[15] They allege Mr. Lasky and Elite failed to provide adequate security and failed to perform criminal background checks on prospective tenants.[16] They also allege Mr. Lasky and Elite failed to implement policies and procedures to protect tenants.[17] They allege Mr. Lasky and Elite's conduct caused them serious physical injuries.[18]

A Safeco representative called Old Guard's assigned defense counsel to discuss the *Yates* action.[19] Old Guard's counsel later emailed the Safeco representative on September 24, 2024 asking Safeco to confirm Safeco would provide a defense and indemnity to Elite under Mr. Lasky's Safeco policy.[20] A Safeco representative then told Old Guard, "[i]n reviewing both the Safeco and [Old Guard] policies, it appears the 'Other Insurance' language is mutually repugnant and coverage may be pro rata rather than on a primary/excess basis."[21] Old Guard's counsel emailed

the same Safeco representative a few weeks later claiming "Safeco has a duty to defend Elite, and coverage under the Safeco policy is primary. Coverage under the [Old Guard] policy will be excess over the Safeco policy for the *Yates* action."[22] Old Guard's counsel did not address whether the "Other Insurance" provisions were mutually repugnant.[23]

Old Guard and Safeco did not further discuss the policies. They are now both paying costs of defense in the ongoing *Yates* matter: Safeco is defending its insured Mr. Lasky under its policy and Old Guard is defending its insured Elite under its policy.[24]

Mr. Lasky and Elite separately moved for summary judgment on the *Yates* claims in state court on June 1, 2026.[25] The state court administrators reassigned both summary judgment motions to a new judge two weeks ago and the parties await a decision.[26] Trial is set for October 2026.[27]

***Old Guard asks we declare the insurers' obligations to defend Elite.***

Elite's insurer Old Guard would like to stop paying the costs of Elite's defense arguing Elite is an additional insured under Mr. Lasky's Safeco policy. The parties dispute the priority of coverage for Old Guard's insured Elite.[28] Old Guard sued here asking we declare Safeco must defend and indemnify Elite in the ongoing *Yates* state court matter as an additional insured under Mr. Lasky's policy.[29] Old Guard also seeks reimbursement of the litigation costs and attorneys' fees it incurred defending Elite.[30]

## II. Analysis

Safeco moves to dismiss Old Guard's Complaint seeking declaratory relief.[31] It argues the Old Guard policy provides primary coverage for Elite and it only agreed to provide excess coverage for Elite.[32] Old Guard opposes Safeco's motion.[33] Old Guard counters the Safeco policy provides primary coverage for Elite and the Old Guard policy provides excess coverage.[34] The question is whether Elite's status as an additional insured under Mr. Lasky's Safeco policy affects

our analysis. It does not. Safeco did not agree to pay Elite's defense costs until Elite exhausted its policy with Old Guard. We grant Safeco's motion to dismiss.

**A. We follow the plain language of the Safeco policy.**

Safeco and Old Guard dispute whether Safeco agreed to provide primary coverage for Elite as an additional insured on Mr. Lasky's liability policy.[35]

The interpretation of an insurance policy is a question of law.[36] Our focus when interpreting an insurance policy is to ascertain the parties' intent expressed in the policy language.[37] The "polestar" of our analysis is the policy's plain language.[38] We read an insurance policy as a whole and construe its terms under their plain meaning.[39]

Insurance policies are divided into two levels of coverage based on their terms: primary coverage and excess coverage.[40] Primary insurers are liable when there is an injury within the scope of the policy.[41] Excess insurers are not liable until the primary coverage has been exhausted.[42] "Other Insurance" provisions allocate responsibility among multiple insurers when primary and excess coverage is an issue.[43] The "Other Insurance" clause distinguishes between primary and excess coverage.[44]

Both the Safeco and Old Guard policies' "Other Insurance" provisions address the priority of coverage when another policy provides coverage for the same insured.[45] Mr. Lasky purchased a Safeco policy, which, in the "Other Insurance" provision, notified him "[t]his insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."[46] Elite's Old Guard policy "is primary except when" it is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured."[47]

The question is whether Elite's status as an additional insured on Mr. Lasky's Safeco policy affects Safeco's obligations. Both insurers address the Pennsylvania Supreme Court's analysis of "Other Insurance" policy language two dozen years ago in *Harleysville Insurance Cos. v. Aetna Casualty & Surety Insurance Co*.[48] The *Harleysville* insurance coverage dispute arose from a truck accident where the truck owner purchased primary insurance from Pennland Insurance Company and excess insurance from Harleysville Insurance Companies and the truck driver's mother purchased an automobile policy from Aetna Casualty and Surety Insurance Company.[49] The truck owner's Harleysville policy provided excess coverage over "any valid and collectible primary insurance."[50] An Aetna policy provided excess coverage over "any other collectible insurance."[51] Aetna did not provide coverage for its insured driver arguing Harleysville must cover the driver.[52] The Pennsylvania Supreme Court held the Aetna policy was not "primary insurance" as the term is used in the Harleysville policy.[53] The Harleysville policy occupied the second tier of coverage, and the Aetna policy occupied the third tier.[54] The Pennsylvania Supreme Court focused on the Harleysville policy's plain language and concluded it must be exhausted before Aetna's policy is triggered.[55] We today review similar issues.

The language in the Safeco and Old Guard "Other Insurance" provisions is similar to the language in the provisions at issue in *Harleysville*.[56] Elite's Old Guard policy provides primary coverage except where "any other primary insurance" is available to Elite as an additional insured.[57] Elite's Old Guard policy is like the language in the Harleysville policy, which provided excess coverage over "any valid and collectible primary insurance."[58] In contrast, Mr. Lasky's Safeco policy notifies him "[t]his insurance is excess over any other valid and collectible insurance."[59] Mr. Lasky's Safeco policy language is like the language in the Aetna policy, which provided excess coverage over "any other collectible insurance."[60]

Old Guard acknowledges the "Other Insurance" provision in Mr. Lasky's Safeco policy bears similarities to the Aetna policy the Pennsylvania Supreme Court reviewed in *Harleysville*.[61] But Old Guard argues the Pennsylvania Supreme Court's ruling in *Harleysville* is not persuasive here.[62] Old Guard argues Mr. Lasky's Safeco policy provides primary coverage because the policy imposes a duty to defend and Safeco is defending Mr. Lasky in the *Yates* matter.[63] Old Guard contends the Pennsylvania Supreme Court did not consider similar facts in *Harleysville*.[64] But Safeco argues *Harleysville* controls.[65] Safeco argues its duty to defend Mr. Lasky is irrelevant to the priority of coverage between the Safeco and Old Guard policies as they apply to Elite as the additional insured on Mr. Lasky's Safeco policy.[66] We are not persuaded by Old Guard's argument. We follow the Pennsylvania Supreme Court's reading of the plain policy language in *Harleysville*.[67]

We find Mr. Lasky's Safeco policy is not "primary insurance" as the term is used in the Old Guard policy because Safeco's plain language states it is excess over any other policy.[68] In contrast, the Old Guard policy's default is primary coverage and becomes excess only where "other primary insurance" is available to Elite.[69] The Safeco policy provides excess coverage over any other "valid and collectible insurance."[70]

Safeco agreed to provide coverage when the loss is "excess over any other valid and collectible insurance."[71] Because the Safeco policy's plain language states it provides excess coverage, it does not qualify as "other primary insurance" under the Old Guard policy. Old Guard could have defined "primary insurance" to include a policy such as the Safeco policy, which provides excess coverage over any other valid and collectible insurance. It did not.[72] We give effect to the insurance policy language the parties agreed to.[73] The Safeco policy does not trigger the Old Guard policy's excess provision.

**B. We are not persuaded by Old Guard's arguments.**

Old Guard offers two reasons why the policies' plain language should not govern here. But we are not persuaded by them. Old Guard first argues the Management Agreement makes the Safeco policy primary.[74] We disagree. Mr. Lasky and Elite's Management Agreement did not change the priority of coverage. Old Guard next argues the policies' "Other Insurance" provisions are mutually repugnant and Safeco should be equitably estopped from arguing we can reconcile the language.[75] We disagree. The policies can be reconciled.

**1. The Management Agreement does not change the coverage.**

Old Guard argues Mr. Lasky agreed to obtain insurance protecting himself and Elite under the Management Agreement.[76] Old Guard argues Safeco provides primary coverage because Mr. Lasky purchased the Safeco policy to satisfy this Management Agreement.[77] Safeco argues the Management Agreement does not change the policies' terms.[78] We agree with Safeco.

The Management Agreement is extrinsic evidence given the plain meaning of the Safeco policy. We only consider extrinsic evidence to interpret an insurance policy when the policy language is ambiguous.[79] An insurance policy is ambiguous when it can reasonably be understood in more than one way.[80] But mere disagreement over the meaning of the disputed language between parties does not make it ambiguous.

The Safeco policy's unambiguous language provides excess coverage to Elite. Because the policy language is unambiguous it controls and we do not need to consider extrinsic evidence like the Management Agreement. But even if we consider the Management Agreement, it supports our conclusion Safeco provides excess coverage to Elite. Like the insurer before Judge Rufe in *Allstate* who did not consent to the dealership agreement, Safeco did not consent to the Management Agreement between Mr. Lasky and Elite.[81] Neither the Old Guard policy nor the Safeco policy

references the Management Agreement.[82] Second, even if we consider the Management Agreement's terms they do not specify whether Mr. Lasky had to obtain primary or excess coverage for Elite. The Management Agreement between Mr. Lasky and Elite required Mr. Lasky to maintain general liability insurance and to include Elite as an additional insured on the policy; it did not require Mr. Lasky to obtain primary or non-contributory coverage.[83] Mr. Lasky and Elite did not address primary or excess coverage at all in the Management Agreement.[84] The Management Agreement does not change the priority established by the policies' "Other Insurance" provisions.

**2. Safeco and Old Guard's "Other Insurance" provisions can be reconciled.**

The Safeco and Old Guard policies both include "Other Insurance" provisions.[85] Old Guard argues in the alternative the Safeco policy and the Old Guard policy should share in the defense of Elite because their "Other Insurance" provisions cannot be reconciled.[86] Old Guard argues the "Other Insurance" provisions are mutually repugnant.[87] Safeco responds the "Other Insurance" provisions in the Safeco policy and Old Guard policy are not mutually repugnant and can be reconciled.[88] We can reconcile the "Other Insurance" provisions in the Safeco policy and the Old Guard policy. The "Other Insurance" provisions are not mutually repugnant.

When two applicable insurance policies include excess clauses we must determine whether the clauses can be reconciled or are mutually repugnant.[89] We can reconcile excess clauses when we "can give effect to both provisions at once."[90] Excess clauses are mutually repugnant when one policy directly conflicts with the other.[91] We disregard the excess clauses and require the insurers to share the loss if the policies are repugnant.[92]

We can reconcile the "Other Insurance" clauses in the two policies here. The Old Guard policy's default is to provide primary insurance to Elite; it becomes excess only if "any other

primary insurance" is available to Elite.[93] So the Old Guard policy is written as excess only over another primary insurance.[94] The Safeco policy, in contrast, provides excess coverage over any "other valid and collectible insurance."[95] Safeco's "other insurance" provision is not limited to other primary insurance.[96] The difference allows us to reconcile the "Other Insurance" provisions in the two policies without placing them in direct conflict. Pennsylvania law requires us to do so.[97] The result is the Old Guard policy applies (and must be exhausted) by Elite before it can seek coverage under the Safeco policy.

Old Guard claims Safeco is equitably estopped from arguing we can reconcile the policies' "Other Insurance" provisions.[98] Old Guard argues a September 24, 2024 email from a Safeco representative supports its alternative argument the policies should share losses equally.[99] The Safeco representative told Old Guard's counsel, "[i]n reviewing both the Safeco and [Old Guard] policies, it appears the 'Other Insurance' language is mutually repugnant and coverage may be pro rata rather than on a primary/excess basis."[100] Safeco argues it is not estopped from arguing we can reconcile the language in the policies.[101] We agree with Safeco.

Equitable estoppel is a doctrine of fundamental fairness.[102] A party asserting estoppel must show the opposing party induced it to believe certain facts existed.[103] The party must justifiably rely on the inducement.[104] The party must show evidence of prejudice.[105] Prejudice may not be presumed.[106] The party asserting estoppel must establish these elements by "clear, precise, and unequivocal evidence."[107] For example, in *Chrysler Credit Corp. v. First National Bank and Trust Co. of Washington,* Chrysler Credit and the bank regularly communicated about financing transactions before payment.[108] The bank argued the court should equitably estop Chrysler Credit's recovery based on those communications and the parties' established business practice.[109] Our Court of Appeals affirmed Judge Ziegler's judgment rejecting the bank's estoppel defense because

the bank offered no evidence it would have acted differently without Chrysler Credit's approval practice.[110]

Old Guard has not shown Safeco is estopped from arguing its policy can be reconciled with Old Guard's policy. Old Guard did not plead it relied on the Safeco representative's September 24, 2024 email. Old Guard did not sufficiently plead the Safeco representatives' statements caused it prejudice. Old Guard did not show it altered its behavior based on the Safeco employee's representation. We find no basis to equitably estop Safeco from arguing the policies' "Other Insurance" provisions are reconcilable.

**C. Conclusion**

We grant Safeco's Motion to dismiss. The Old Guard policy provides primary coverage to Elite. The Safeco policy provides excess coverage to Elite. Safeco's coverage of Elite as an additional insured will be triggered only when Old Guard's coverage is exhausted in the *Yates* matter.

Safeco argues Old Guard's indemnity claim is not ripe.[111] The issues on indemnity obligations are not ripe and we dismiss them without prejudice.

---

[1] ECF 1-3 at 26–30.

[2] *Id.* at 28.

[3] *Id.* at 28 ¶ 9.

[4] *Gen. Refractories Co. v. Allstate Ins. Co.*, Co., No. 89-7924, 1994 WL 246375, at *4 (E.D. Pa. June 8, 1994).

[5] *Id.*

[6] *Id.*

[7] *Id.* at *7–8.

[8] ECF 1-3 at 6, 303–43.

[9] *Id.* at 343.

[10] *Id.* at 339 ¶ 9.

[11] *Id.* at 32–301.

[12] *Id.* at 181 ¶ 4.

[13] ECF 1-3, ¶ 14. (Civil Action, *Yates et al. v. Lasky, et al*., No. 240401624 (Phila. Ct. of C.P. filed Apr. 11, 2024)).

[14] *See Yates*, No. 240401624. We can consider "matters of public record" when resolving a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) ("[T]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999))).

[15] ECF 1-3, *Yates*, No. 240401624, ¶ 15.

[16] *Id.* ¶ 16(a), (b), (d).

[17] *Id.* ¶ 16(e), (f), (g), (h), (i).

[18] *Id.* ¶¶ 18, 25.

[19] ECF 1-3 at 346.

[20] *Id.* at 347.

[21] *Id.* at 346. We edited to confirm the references to Westfield includes Old Guard Insurance Company. *Id.* at 36.

[22] ECF 12-1 at 2–6.

[23] *Id.* The parties do not advise whether Safeco responded.

[24] ECF 1-3 at 8 ¶¶ 26, 28.

[25] Motion for Summary Judgment, *Yates*, No. 240401624 (Control Nos. 26060623 and 26060260).

[26] Motion Assignment Updated, *Yates*, No. 240401624 (Control No. 26060623).

[27] Revised Case Management Order, *Yates*, No. 240401624, at 1.

[28] ECF 1-3 at 9 ¶¶ 39–41; 10 ¶ 42.

[29] *Id.* 10 ¶ 42(1), (2).

[30] *Id.* at 10 ¶ 42(3).

[31] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[32] ECF 9-1 at 7–10.

[33] ECF 10-1 at 1.

[34] *Id.* at 5–10.

[35] ECF 9-1 at 7–10; ECF 10-1 at 6–10; ECF 12 at 2–3.

[36] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).

[37] *Id.*

[38] *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

[39] *Am. Auto. Ins. Co.*, 658 F.3d at 320.

---

[40] *See Gen. Refractories Co. v. Allstate Ins. Co.*, No. 89-7924, 1994 WL 246375, at *4 (E.D. Pa. June 8, 1994).

[41] *See id.*

[42] *See id.*

[43] *Id.* at *7–8.

[44] *See Harleysville Ins. Cos. v. Aetna Cas. & Sur. Ins. Co.*, 795 A.2d 383, 385 (Pa. 2002) ("'Other insurance' clauses purport to limit the insurer's liability when other insurance is applicable to the loss.").

[45] ECF 1-3 at 181, 339.

[46] *Id.* at 339 ¶ 9.

[47] *Id.* at 181 ¶ 4.

[48] *Harleysville Ins. Cos.*, 795 A.2d at 259.

[49] The summary of the *Harleysville* holding suffices for our legal analysis. But a more detailed review of the facts may assist in understanding the Pennsylvania Supreme Court's decision in *Harleysville*. Mr. Lawrence owned a truck and allowed his grandson, Mr. Kolesar, to use it. Mr. Kolesar allowed his friend, Mr. Stefko, to drive the truck while Mr. Kolesar rode as a passenger. Mr. Kolesar suffered injuries in an accident while his friend Mr. Stefko drove the truck. Mr. Kolesar sued Mr. Stefko to recover for his injuries.

Grandfather Lawrence purchased a "Personal Auto Policy" from Pennland Insurance Company with liability limits of $300,000. The Pennland policy, in the "Other Insurance" provision, confirmed "[i]f there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." Grandfather Lawrence also purchased a Personal Blanket Excess Liability Policy from Harleysville with liability limits of $1,000,000. This Harleysville policy, in the "Other Insurance" provision, confirmed "[t]he insurance afforded by this policy shall be excess insurance over any valid and collectible primary insurance, whether or not shown in the Declarations. If other insurance provides for payment only in excess of a stated amount of liability for each occurrence, we will pay only our share. Our share is the proportion that our limit of liability bears to the total limits of all applicable policies providing insurance on that basis."

The grandson's friend Mr. Stefko qualified as an insured under his mother's separate automobile liability policy from Aetna with liability limits of $250,000. Mr. Stefko's mother's Aetna policy, in the "Other Insurance" provision, provided "[i]f there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

Aetna refused to defend Mr. Stefko when Mr. Kolesar sued him. Aetna argued it had no obligation under its policy until the litigation costs exhausted the Pennland and Harleysville policies. Harleysville defended Mr. Stefko. The settlement and arbitration resulted in a $550,000 award to Mr. Kolesar. Pennland tendered its $300,000 policy limits to Mr. Kolesar. Harleysville paid the remaining $250,000 to Mr. Kolesar but reserved its rights against Aetna. And then the insurers began their dispute.

[50] *Id.* at 261.

[51] *Id.* at 262.

[52] *Id.* at 258.

[53] *Id.* at 261.

[54] *Id.* at 262.

[55] *Id.*

[56] ECF 1-3 at 339 ¶ 9, 181 ¶ 4; *Harleysville Ins. Cos.*, 795 A.2d at 259.

[57] ECF 1-3 at 181 ¶ 4.

[58] *See Harleysville Ins. Cos.*, 795 A.2d at 259.

[59] ECF 1-3 at 339 ¶ 9.

[60] *Harleysville Ins. Cos.*, 795 A.2d at 262.

[61] ECF 10-1 at 7.

[62] *Id.* at 7–8

[63] *Id.*; *Yates*, No. 240401624.

[64] *Id.* at 8.

[65] ECF 9-1 at 9.

[66] ECF 12 at 1–2.

[67] *See Harleysville Ins. Cos.*, 795 A.2d at 259–62.

[68] *See* ECF 1-3 at 181 ¶ 4, 339 ¶ 9.

[69] *See id.* at 181 ¶ 4. The Old Guard policy provides "This insurance is primary except when Paragraph b. below applies." *Id.* Paragraph b provides "[a] ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." *Id.*

[70] *Id.* at 339 ¶ 9.
[71] *Id.*

[72] *See id.* at 181 ¶ 4.

[73] *Am. Auto. Ins. Co.*, 658 F.3d at 320; *Madison Constr. Co.*, 735 A.2d at 106.

[74] ECF 10-1 at 7, 9.

[75] *Id.* at 10–11.

[76] ECF 10-1 at 7.

[77] *Id.*

[78] ECF 12 at 3–4.

[79] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).

[80] *Lomma v. Ohio Nat'l Life Assurance Corp.*, 788 F. App'x 104, 107 (3d Cir. 2019).

[81] *See Allstate Ins. Co.,* 464 F. Supp. 2d at 458.

[82] *See* ECF 12 at 4.

[83] ECF 1-3 at 4, 28 ¶ 9.

[84] *Id.*

[85] *Id*. at 181 ¶ 4, 339 ¶ 9.

[86] *Id.* at 10-11 ¶¶ 44–53.

[87] *Id.* at 10-11 ¶¶ 44, 45, 52.

[88] EFC 9-1 at 9.

[89] *See St. Paul Fire & Marine Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 524 F. Supp. 3d 410, 417 (E.D. Pa. 2021).

[90] *See id.* (citing *Am. Cas. Co. of Reading v. PHICO Ins. Co.*, 702 A.2d 1050, 1054 (Pa. 1997)).

[91] *Id.* at 417–18 (citing *Am. Cas. Co. of Reading*, 702 A. 2d at 1054).

[92] *Id.* at 418.

[93] ECF 1-3 at 181 ¶ 4.

[94] *Id.*

[95] *Id.* at 3.

[96] *Id.*

[97] *St. Paul Fire & Marine Ins. Co.*, 524 F. Supp. 3d at 418.

[98] ECF 9-1 at 11–12; ECF 10-1 at 11–12; ECF 12 at 5–6. We are unclear how Old Guard asserts this equitable estoppel theory. It did not, nor could it, allege equitable estoppel as a cause of action. *See Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 265 (E.D. Pa. 2022) ("[E]quitable estoppel is not a separate cause of action. It may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense." (quotation omitted)).

[99] ECF 10-1 at 11–12; ECF 1-3 at 11 ¶ 55.

[100] ECF 1-3 at 346.

[101] ECF 9-1 at 11–12.

[102] *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 456 (M.D. Pa. 2013), *order amended* (Apr. 8, 2013).

[103] *Id.*

[104] *Id.* at 457.

[105] *Id.* at 460.

[106] *Merchants Mut. Ins. Co. v. Artis*, 907 F. Supp. 886, 892 (E.D. Pa. 1995).

[107] *Chrysler Credit Corp. v. First Nat'l Bank & Tr. Co. of Wash.,* 746 F.2d 200, 206 (3d Cir. 1984).

[108] *Id.*

[109] *Id.*

[110] *Id.* at 207.

[111] ECF 9-1 at 2.